POSTAL TELEGRAPH-CABLE CO. v. DARROW.

(Circuit Court of Appeals, Third Circuit. April 29, 1918.)

No. 2314.

1. TRIAL ⟨key⟩142—JURY QUESTION.
    Where only one finding is possible under the evidence, the matter should be decided by the court, although, if opposite inferences can be drawn, the question is one for the jury.

2. COURTS ⟨key⟩323—DIVERSITY OF CITIZENSHIP—EVIDENCE.
    Evidence on the question whether the husband of plaintiff, a resident of Pennsylvania, was in the employ of defendant, a New York corporation, at the time he met his death, *held* to conclusively show that he was employed by a Pennsylvania corporation, so there was no diversity of citizenship, giving the federal District Court jurisdiction.

In Error to the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Action by Jessie G. Darrow, a citizen and resident of the state of Pennsylvania, against the Postal Telegraph-Cable Company, a citizen and resident of the state of New York. There was a judgment for plaintiff (229 Fed. 314), and defendant brings error. Reversed.

Walter L. Hill and Knapp, O'Malley, Hill & Harris, all of Scranton, Pa., for plaintiff in error.

R. W. Archbald, of Scranton, Pa., and Paul J. Sherwood, of Wilkes-Barre, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. Willis Darrow was a lineman in the employ of the Postal Telegraph-Cable Company. While working among the wires on a line near the town of Summerville, in the State of Pennsylvania, Darrow fell and was killed. The circumstances tend to show that an electric shock was the cause of his fall.

Jessie G. Darrow, the widow of Willis Darrow, brought this action to recover damages for the death of her husband, alleging that her husband was the servant of the defendant and charging the defendant with negligence in failing to perform its duty as master to warn him of the latent dangers of his employment. The verdict was for the plaintiff. The defendant sued out this writ of error.

The plaintiff was a citizen of the State of Pennsylvania; the defendant a corporation of the State of New York. Jurisdiction of the District Court was based upon this diversity of citizenship. The defendant challenged the court's jurisdiction by attacking the service upon the return of the writ, and, failing in this, by moving for binding instructions. The court refused the motion and submitted the issue to the jury. The refusal of the motion is assigned as error.

The corporation sued is the Postal Telegraph-Cable Company, a corporation of the State of New York. The plaintiff charges in her statement that this corporation comprises the great telegraph and cable

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

system extending over a large part of the world, with which all are familiar; that it is engaged in business in the judicial district of the trial court—the Middle District of Pennsylvania—wherein its offices are located and its telegraph lines are stretched and extended; that it there employed Darrow as a lineman and set him to work on its line, from which he fell and was killed by reason of its negligence.

The defendant (which for convenience we shall call the New York corporation) denies that it is the telegraph and cable system alluded to in the plaintiff's statement, but maintains on the contrary that it is only a part of or a unit in the described system; that this system is composed of thirty-eight separately created and independently maintained telegraph corporations, many of which have the corporate name of Postal Telegraph-Cable Company, by which name the system also is known; that among these corporations is the Postal Telegraph-Cable Company, a corporation of the State of Pennsylvania (which we shall hereafter refer to as the Pennsylvania corporation); that this corporation owns and maintains the line in Pennsylvania; that it was Darrow's employer; and that if Darrow's death was due to negligence, it was the negligence of the Pennsylvania corporation and not the negligence of the New York corporation.

To this contention the plaintiff replies (as stated by the court in its charge):

"That the Pennsylvania company is only a unit of the system of the defendant (New York) company and holds a subordinate position, being but a means or instrument in, furthering the business of the major corporation, the defendant New York company, or, that, in other words, the local Pennsylvania corporation is merely the agency of the foreign corporation, in conducting its business in this state, and that the latter, the New York corporation, is therefore engaged in business here."

The question is: Which of the two corporations, bearing the same name, was Darrow's employer? The determination of this question involves, of course, the identity or diversity of citizenship of the real parties to the controversy, and goes directly to the jurisdiction of the court.

[1] If the issue of employment arose out of conflicting testimony which would sustain a finding that either one corporation or the other was the employer of Darrow, the issue was properly submitted to the jury and its finding is conclusive. But if the testimony did not admit of opposite inferences and would sustain but one finding, the issue should have been decided by the court on the motion for binding instructions.

[2] In view of the gravity of the question, we have given the evidence very full and very careful consideration. As the question is purely one of fact, we shall state the evidence only in outline.

It is important in the very beginning to distinguish between the Postal Telegraph-Cable system and the component corporate parts of the system which bear the same name, and to distinguish also between the assertions of pleadings and the evidence in respect thereto. The plaintiff, in declaring against the New York corporation, avers that it "comprises" the system and treats it as maintaining and operating the system's lines wherever they go, either directly by its own servants or in-

directly by the agency of subsidiary corporations. It is upon the theory that the New York corporation *is* the system, or, in fact, *operates* the system, that the plaintiff relies for proof that the New York corporation was Darrow's employer. We think the evidence shows the system to be something very different.

The Postal Telegraph-Cable system is not a corporation. It is in no sense a legal entity. So far as appears, it is without physical property and is not engaged in building, maintaining, or operating telegraph lines. Nor is there evidence that it is otherwise a body having shares of its own or owning and holding shares of other companies by which it controls them. It is an organization or rather an arrangement by which thirty-eight separately incorporated though similarly owned corporations conduct the business of transmitting telegraphic messages through and beyond the states of their domicile. Neither the system nor the unusual number of corporations composing it appears to be a device by which to evade liability; it appears rather to be an arrangement based upon practical considerations growing out of the size of the business and the peculiar character of the business. These doubtless include the same that affect other large enterprises extending through many states and that tend to favor a multiplicity of local corporate bodies by which to carry on one comprehensive undertaking, such as the variety of state laws affecting taxation, imposing limitations upon foreign corporations, and subjecting foreign corporations to suits by foreign attachment, with their consequent disturbance. But considered with reference to the particular business of the corporations comprising the system, it is apparent that the object of the arrangement is primarily to facilitate the interchange of business and to effect cooperation in the transmission of messages over broad areas and for great distances. To this end the different corporations of the system enter into agreements with each other—somewhat akin to railroad traffic agreements for joint rates over through routes—whereby they agree upon points at which through messages are to be turned over by one corporation to another and upon the division of tolls. The object of the arrangement is secondarily one of administrative efficiency and economy. To this end, certain corporations have the same executives and employ in common the same experts and superintendents according as the business of contiguous properties makes it expedient or necessary; there is maintained a common store from which supplies are drawn; and the same books of instruction and literature concerning rates and methods of sending messages are distributed and used by all corporations throughout the system. But the entity of each corporation is strictly maintained and no corporation is subservient to another. While there is co-operation between all in the interchange and transmission of messages, each owns its telegraph and cable lines and separately maintains them by its own employés and at its own expense—at least this is the testimony with reference to the New York corporation and the Pennsylvania corporation, with which alone we are here concerned.

How does the scheme of the system bear upon the particular circumstances of this case and what is their legal effect?

Both the New York corporation and the Pennsylvania corporation employed one superintendent. His name was Reynolds. He had authority to employ linemen to maintain and repair sections of the lines of the two corporations. He employed a lineman named Clark to maintain the line from Harford, Pa., to Binghamton, N. Y. The portion of this line that was in Pennsylvania was the property of the Pennsylvania corporation and the portion in New York was the property of the New York corporation. The salaries of the superintendent and of this lineman were apportioned between the two corporations. Clark employed Darrow and set him to work on the line of the Pennsylvania corporation at a point in Pennsylvania. His work consisted in changing the line from one location to another. This work was solely for the Pennsylvania corporation, it was performed solely upon its property, and payment therefor was made with its funds. The plaintiff maintains that the double nature of Reynolds' and of Clark's employment raises a question whether Reynolds in employing Clark and Clark in employing Darrow were acting for the New York corporation or for the Pennsylvania corporation and that the question was for the jury.

We think the services of Reynolds and Clark under their double employment were severable; that by the arrangement Reynolds and Clark were servants of the Pennsylvania corporation in so far as they served or were called upon to serve that corporation, and, similarly, they were servants of the New York corporation in so far as they served that corporation. When acting wholly for one corporation within the scope of their employment by that corporation, their acts did not bind the other. While the two corporations employed these same servants, their services were separately performed upon the respective properties of the two corporations, and payment therefor was separately made. Therefore, when Clark employed Darrow to work on the line of the Pennsylvania corporation (with the maintenance of which the New York corporation had nothing to do), it is evident that Clark was acting for the Pennsylvania corporation and made it liable for any negligence of his that contributed to Darrow's injury.

From this testimony, if not controverted, it appears very clearly that Darrow was employed by and was working for the Pennsylvania corporation at the time of his injury, and that, in consequence, the plaintiff's right of action, if any she had, was against that corporation, a citizen of her own state.

But the plaintiff maintains that this testimony was controverted, that she established prima facie that the defendant New York corporation was her husband's employer, and that as between her prima facie case and the defendant's testimony contra, the jury were the sole judges and by their verdict they have determined the issue in her favor. This position cannot be assailed if the facts sustain it.

For right to maintain this action against the New York corporation the plaintiff relies firstly upon the charter of that corporation granted by the state of New York, which authorizes it to maintain and operate telegraph lines "partly beyond the limits of this state." There is no

evidence that the New York corporation was engaged in the exercise of this doubtful authority.

She next relies upon an agreement between the two corporations having to do with the interchange of business, which provides that messages which each corporation accepts for transmission to the line of the other shall be turned over at Carbondale, Pa., "or at such other connecting points as shall best secure prompt transmission to destination." Carbondale is a point in Pennsylvania on the line owned and maintained by the Pennsylvania corporation. Messages that require transmission over the lines of both corporations necessarily have to be turned over from one to the other somewhere, either in the State of Pennsylvania, or in the State of New York, or precisely on the line dividing the two states. The last place being quite impracticable, the parties agreed that the turnover should be made at a convenient point within Pennsylvania.

In sending messages between New York and Carbondale it appears that they pass over the wires of the Pennsylvania corporation through the point at which Darrow met his injury. The plaintiff contends, therefore, that the New York corporation was operating the Pennsylvania line at the point of Darrow's injury, and was, for that reason, Darrow's master. But by another provision of the same contract between the two corporations, each agreed *"to maintain* its telegraph lines * * * in good working order and repair, at its own cost and expense, and *to repair* with the utmost diligence any interruption in said lines." It was while the Pennsylvania corporation was maintaining and repairing its own telegraph lines between Carbondale and the state line, pursuant to the latter provision of the contract, that Darrow met his death. If Darrow's death was due to negligence, it was occasioned by some act or omission incident to the repair and maintenance of the line by the Pennsylvania corporation and not by the transmission of through messages over the line by the New York corporation under the contract for the interchange of through business. Darrow's employment related solely to the maintenance of the line, liability to Darrow rested solely upon the corporation which had placed him in that employment. There is nothing in the turnover contract or in the conduct of the parties acting under it which suggests that the New York corporation employed Darrow to do what the Pennsylvania corporation had undertaken to do.

Finally, the plaintiff relies upon a book issued from the headquarters of the system in New York City, which was also the office of the New York corporation. This book is entitled "List of Officers, Revised Tariff Instructions and Rules," and contains, among other things, the names of officers of the Postal Telegraph-Cable Company, without designating whether they are officers of the system or of the New York corporation bearing the same name. It was published and distributed for use by all corporations throughout the system. Its evident purpose is to combine in one volume information as to the handling of messages wheresoever received and wheresoever to be sent. It contains a list of all stations of all corporations in the system at which messages will be accepted and to which they will be forwarded. It is

adapted for use in California as well as in Pennsylvania. For purposes of accounting it contains such expressions as "this line stations," and "connecting line stations." It also shows, when read in connection with rate sheets, the rates at which through messages will be accepted by one station and forwarded to another wheresoever located. "This line stations" was explained as denoting the corporation or line to which a given station belongs and "connecting line stations" as denoting the stations of other corporations with which the former connects. The expression "this line stations," as applied to different stations, is designated by the key letter "P." Scranton, Pa., is so marked. The plaintiff insists that the book is the book of the New York corporation, that "this line" as appears in its book, means the line of this New York corporation, and that, as Scranton is a "this line station" on the line in Pennsylvania, "this line"—that is, the Pennsylvania line on which Darrow was killed—is the line of the New York corporation, and, in consequence, the New York corporation was Darrow's employer. Looking at the book from every aspect, we find nothing from which it can be inferred that the line of the Pennsylvania corporation belongs to the New York corporation or that the New York corporation was conducting, either directly or indirectly, repair work upon it at the time Darrow met his death.

We have considered very carefully all the testimony of the case in order that nothing touching the issue of Darrow's employment should escape us. Upon this issue, we are unable to discover a conflict in the testimony from which opposite views can be taken and sustained. After the opportunity for deliberate consideration of the record, which the trial judge, in the hurry of the trial, did not have, we find ourselves constrained to hold that he erred in submitting to the jury the question whether the defendant corporation, acting directly through its servants or indirectly through the Pennsylvania corporation as its agent, employed Darrow, in view of testimony that clearly admits of but one inference, which is, that the defendant corporation did not employ him.

In disposing of the case upon this ground, we are not called upon to consider the remaining assignments of error.

The judgment below is reversed.